*53 MR. JUSTICE SHEA,
dissenting:
Defendant should be granted a new trial. Testimony of Carla Brave relating to defendant being in prison for rape was not only prejudicial, it was not relevant. Moreover, the court failed to instruct the jury on the essential elements of the offense for which defendant was convicted.
Before witness Carla Brave testified to the statement made by defendant that he had been in prison for rape, defense counsel moved that the statement be suppressed. The prosecution then made an offer of proof as to the relevancy of the statement to the following effect:
“Your Honor, we offer to prove by the testimony of Carla Brave, in light of the question asked her, that William Collins volunteered that he had been in prison, and that he had been in prison for the crime of rape. And we, in that regard, suggest this is relevant, inasmuch as it isn’t true, that that fact is not true. It shows what was on Mr. Collins’ mind at that time, namely sex with Carla Brave. And that certainly bears on the events as they later transpired. Who did what for what purpose. In that regard it is strictly relevant, it is material. And because it is an admission, a statement made by the defendant, and because it is relevant and material, we suggest that the Court hear the testimony.” (Emphasis added)
The court then let the jury hear the testimony. During cross-examination Carla Brave admitted that in talking to a deputy after the shooting that he had told her that defendant had not been in prison for rape.
Defendant asserted self-defense and while testifying in his own behalf stated that he had not made the statement to Carla Brave. However, he was also impeached under the old rule in Montana which was mechanically followed by trial judges which allowed the state to ask the defendant if he had ever been convicted of a felony. Defendant admitted that he had, but the nature of the felony was never stated to the jury. The situation was such that at the end of the prosecution’s case the jury did not know whether defendant had been in prison for rape. The situation was not allevi *54 ated by the defendant’s testimony. He denied that he had been in prison for rape, but also admitted that he had been convicted of a felony, although the jury did not know the nature of that felony. It would certainly be understandable that a jury would conclude that defendant did not tell the truth when he denied making the statement to Carla Brave. For this reason alone, the jury may have decided to distrust defendant in the remainder of his testimony.
The majority has concluded that the statement, although known by the prosecution to be false, was relevant to the defendant’s state of mind preceding the shooting. Relevant to what? On this point the opinion is silent. If true, what did the statement tend to prove? Even if made, this statement was clearly not relevant to any issue in the case. Moreover, its prejudicial effect outweighed any probative value it may have had.
At trial, before going any further, the trial court should first have made a determination that the alleged statement to Carla Brave was relevant. There is nothing in the record from which we can determine if the trial court concluded that the alleged statement was relevant to any issue in the case. It is true that the prosecution argued that it shows defendant’s state of mind as desiring to have sex with Carla Brave. (But even if true, that fact, as will be explained later, had nothing to do with issues at trial.)
It is clear here, that the state admitted (at least to the trial judge in chambers) that defendant had not in fact been convicted of rape. This being so, the trial court had the further duty of determining the likelihood of defendant having made the statement to Carla Brave. In the nature - of things, a person does not normally go around exclaiming to the world that he has been in prison for rape. Particularly would this be so when such is not the fact. Clearly the probabilities were that defendant did not make this statement to Carla Brave at all. It could be that she was deliberately not telling the truth or that she had misinterpreted what defendant had stated to her. She admitted that she had not revealed this in her statement first given to the prosecution — and the statement extensively covered the events of the evening — including the conversation she had with defendant in his pickup truck.
*55 Given this situation, the prejudice to defendant was manifest. There was a strong probability that defendant did not make this statement but if the jury heard the evidence they might get the idea that defendant, in stating he had been in prison for rape, was in fact implying to Carla Brave that if she did not go along with his desire for sex that he would force her. The further implication from this is that the state was implying that defendant was an evil person and would stop at nothing to have his way — including taking of another person’s life. But the fact is that the circumstances of the shooting had nothing to do with any alleged statement made to Carla Brave that defendant had been in prison for rape.
The events of the evening of the shooting did not transpire at one time. There was a great deal of drinking by all parties concerned throughout the evening and the alleged statement of defendant to Carla Brave took place a considerable time before the shooting. There is not a shred of evidence that the alleged statement had any connection directly or indirectly with the shooting. If defendant had a desire to have sex with Carla Brave, Gardipee was not aware of his desires. There is no evidence that Gardipee knew what defendant and Carla Brave talked about. Indeed, the evidence is that he did not. Under these circumstances, the desire of defendant to have sex with Carla Brave is totally unrelated to his willingness to take Gardipee’s life. Moreover, the circumstances of the assault upon defendant leading to the shooting are totally unrelated to any desire of defendant to have sex with Carla Brave.
The fight in the pickup truck while defendant was driving Carla Brave and Gardipee back to town, was instigated solely by Gardipee. Gardipee suddenly started getting wild about the loss of his ancestral rights and in the process started pounding on defendant while defendant was driving the truck down the road. It is not at all difficult to understand why defendant stopped his truck, got out, and climbed into the back of the camper. Whatever reasons Gardipee had for pounding on the defendant, they certainly did not relate to any knowledge Gardipee had of the conversations defendant had with Carla Brave. Nor does the alleged statement by de *56 fendant to Carla Brave have any connection to defendant’s state of mind when he stopped his truck and climbed into the back of his camper in order to avoid Gardipee’s assault. It is difficult for me to see how defendant had sex on his mind at that time.
The only purpose for the prosecutor to elicit the statement from Carla Brave was to put defendant in as bad a light as possible in the eyes of the jury. To a degree, this is always the objective of the prosecution, but there must be a sound evidentiary basis for doing so. Here there was none. The testimony was not relevant and was clearly prejudicial.
I would also reverse the conviction because the trial court failed to. instruct the jury on the elements of deliberate homicide and mitigated deliberate homicide. The jury was only given a definition of deliberate homicide and mitigated deliberate homicide; it was not provided with instructions setting forth the elements of deliberate homicide and mitigated deliberate homicide, and telling them that each of the elements must be proved beyond a reasonable doubt. Without such instructions the jury did not know what the elements of mitigated deliberate homicide were and the burden of proof required to prove each element. I cannot conceive that a trial court would allow a case to go to a jury without such instruction, nor can I conceive how an appellate court would give its stamp of approval.
The duty to instruct the jury on the law, has been stated as follows in McBride, The Art of Instructing the fury (1969, Anderson Publishing Company) (quoting from California Jury Instructions, Criminal, page 8):
“ ‘In recent years we have witnessed a distinct trend of decision away from the rule of earlier days when it was held not to be error for a court to fail to instruct the jury, in the absence of a request, on even such vital rules as those of reasonable doubt and self defense. This later trend has established as a basic principle that the trial judge has the duty, even in the absence of request, to instruct the jury as to all rules of law that necessarily will be involved in a decision of the cause. People v. Holt, 25 Cal.2d 59, 153 P.2d 21, 24. *57 We do not have sufficient modern precedents to enable us to make a complete list of the instructions that must be given, in the absence of a request therefor, under the modern rule. Generally the trend points to the likelihood of reversal of a conviction if the trial court fails to give any proper and appropriate instruction which, were it given, might result in a different verdict. In instructing jurors, we must assume that they have no knowledge of the rules of law and that, therefore, they must be instructed on all points of law which, under any reasonable theory, might be involved in their deliberations, to the end that their decision will be according to the law and the evidence and untinged by any private and possibly false opinion of the law that they may entertain.’ ” (Emphasis added)
Under any view of a case, the elements of the offenses charged will be involved in a decision of the cause. The failure to instruct the jury on those elements must be reversible error.
It apears that this Court is holding that the duty to properly instruct the jury can be delegated to counsel — and if the trial court does so, he is relieved of any burden either for erroneous instructions submitted to the jury or for failure to instruct the jury on important aspects of the case. While the failure of counsel to submit instructions on the important aspects of the case is surely a sign of ill-preparedness, I fail to see how this relieves the trial court of a duty to properly instruct the jury. This is a situation where the jury was not instructed on the essential elements of the offense for which defendant was convicted. The duty is not only that of defense counsel to see that proper instructions are prepared and offered for the court’s consideration; there is a corresponding duty on the state to see that the jury is instructed on the essential elements of the offenses charged. But regardless of which side provides the instructions, the ultimate duty to fairly instruct the jury on the law resides with the trial judge. If he does not receive propfer instructions he should refuse to send the case to the jury until he is convinced he has the proper instructions. I cannot believe that the only duty of the trial judge is to accept or reject the instructions which are offered to him by counsel for both sides. If instructions are either improperly worded, or are omitted, he should direct counsel to *58 properly word the instructions or to supply the omitted instructions. Only then can we say that the trial judge has properly discharged his obligations to the law. That was not done in this case.